## City of Hazard v. Calhoun et al.

(Decided February 13, 1931.)

CLARK PRATT for appellant.

ROY HELM for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

About the year 1912, Bertha Lyttle laid out a subdivision of some property she owned in Hazard, Ky., and recorded the plat showing the streets and alleys and the lot numbers of the subdivision. As platted, the southerly line of lots 64 to 68, inclusive, of this subdivision abutted some 148 feet on a street designated as Laurel street. Along the western side of lot 64 and the northwestern side of lots 65 and 66 there was laid out an alley. Some years later there was erected on these lots a residence, and in 1924 the appellees, Mr. and Mrs. Calhoun bought the house and lots. In the year 1925 the city of Hazard passed an ordinance for the improvement of Laurel street and the alley mentioned. The contractors did the work in accordance with the plans and specifications prepared by the city engineer and on the ground as directed by that official. In the doing of the work, the grade of the ground was lowered from 2 to 6 feet all along Laurel street where it abutted on the lots of the Calhoun residence; and along the alley where it abutted on lot 64. Laurel street was improved with concrete, but the alley, though graded, was never paved. Charging that, in lowering the grade of the ground for Laurel street and the alley, the city had gone outside of the limits of Laurel street and the alley as dedicated, and had invaded and encroached upon their property, cutting it down and carrying away the soil, the appellees, plaintiff's below, brought this suit for this alleged taking of the strips of their ground. On the first trial, they secured a verdict in the sum of $1,000. On motion of the city, this verdict was set aside and a new trial granted. On the second trial, the appellees recovered a verdict of $1,200, and from the judgment entered on that verdict this appeal is prosecuted.

Some of the grounds relied upon for reversal in the original brief of the appellant have been eliminated by stipulations filed after this case had been briefed in this court. With these grounds eliminated, the remaining grounds may be summarized as follows: The trial court

erred in admitting incompetent evidence; it erred in overruling the city's motion for a peremptory instruction; it erred in the instructions it gave; and, lastly, the verdict is excessive.

As to the first contention, it is argued that the trial court erred in permitting the appellees to introduce proof to the effect that, after the grade of the ground had been lowered, the bank which was left along the side of the appellee's property was continually breaking off and falling into the street. The theory of the city is that the establishment of the grade on Laurel street was the original fixing of the grade, and hence the city was not responsible for consequential damages resulting from the establishment of that grade. The appellees, however, did not pitch their case on the theory that they were entitled to recover consequential damages resulting from the establishment of the original grade for Laurel street, but pitched it solely on the theory that the city had invaded their property and taken the strips involved. The court told the jury it should consider this complained of evidence solely on the issue as to what state the Calhoun property was left in immediately after the taking of the strips, if they were taken. Clearly the evidence was admissible for that purpose.

It is next insisted that the court erred in admitting the map of a survey made by the surveyor and witness, Lyttle, because he had admitted in his testimony that in making the survey just before he testified from the original calls in the plat recorded in 1912 he had not taken into account the variations of the magnetic needle. However, this was a matter which addressed itself to the jury in determining the weight to be given to Lyttle's survey, and did not affect its admissibility.

It is next argued that the city's motion for a peremptory instruction should have been sustained because the appellees' property was described in their petition as being lots "64, 65, 66, 67 and 68 as shown by the map of Cedar Craig Addition excepting" therefrom certain described property, and, as is now claimed, the appellees failed to show that the property taken lay without the exclusion and within their boundary. We are of opinion, however, that the stipulation signed and filed in this court to the effect that it was admitted below that the appellees were the owners of the tract of land described in their pleadings and the testimony of the appellee L. K.

Calhoun found on page 7 of the transcript to the effect that, with the exclusions mentioned in his deed eliminated, his property faced on the alley and ran 148 feet along Laurel street, this being the place where the grade was lowered, fully sustained the court in refusing to grant the city's motion for a peremptory instruction on this alleged ground.

It is next contended that, conceding the plaintiffs owned the lots in question, they failed to prove any invasion upon such lots. This contention is based on the fact that, as stated, Lyttle, the appellees' surveyor, in making the survey upon which the appellees relied to show an invasion of their property, admitted he had not taken into account the variations of the magnetic needle. However, he testified that in making this survey he had run the lines in both directions from two known monuments which were at the respective ends of one of the calls of these lots which bounded their northwest side. The surveyor for the city who ran his survey from a distant corner of the original Lyttle tract, and who claims to have taken into account the variations of the needle, and who by his survey put all of the excavations within the limits of the street and alley as dedicated, admitted in substance that the variations of the needle, where the distance to be run was not very great, would not be very apparent. As the distances around these lots from the two known monuments was not great, is was obviously for the jury to say whether or not they believed the survey of Lyttle was correct or substantially so. If it did, the appellees proved an invasion of their property.

It is next contended that the court erred in the instructions which it gave. The court told the jury that, if it found for the appellees, it should find for them in such a sum as the jury might believe from the evidence would, to quote, "reasonably and fairly compensate them for the value of the strip" taken. It will be noted that the word "value" in this instruction is not modified by the word "market." To be thoroughly correct, the instruction should have had incorporated within it the word "market." But no evidence was introduced by either side on this question of damages, except such as related to the market value of the land. The court restricted the jury to its finding to such a sum as it might believe the evidence established. In the case of Jefferson Garage v. Salatin, 233 Ky. 686, 26 S. W. (2d) 525, where

an instruction like the one here in question was under fire, we said:

"The Jefferson Garage contends that instead of the words 'fair and reasonable value,' the instruction should have contained the words 'market value.' Technically that is true, but before we can reverse a judgment the substantial rights of the appellant must have been prejudiced. See sections 134, 338, and 756 of Civil Code of Practice and these cases: Consolidation Coal Co. v. Baldridge, 166 Ky. 188, 179 S. W. 18; Chesapeake & O. Ry. Co. v. Shamblen, 166 Ky. 789, 179 S. W. 837; Cincinnati, N. O. & T. P. Railway Co. et al. v. Troxell, 150 Ky. 185, 150 S. W. 41; Southern Railway in Kentucky et al. v. Kentucky Grocery Co., 166 Ky. 94, 178 S. W. 1162; Cincinnati, New Orleans & Texas Pacific Railway Co. v. Sweeney, 166 Ky. 360, 179 S. W. 214; Weil et al. v. Hagan, 161 Ky. 292, 170 S. W. 618; Koltinsky v. Hollowell, 203 Ky. 218, 262 S. W. 6. As all of the evidence was directed to the difference between the market value of this machine as it was before the accident and its market value as repaired after the accident, the jury could not have been misled by the instruction given."

Under the facts and circumstances of this case, and the confining of the jury by the court to a finding in such a sum as it might believe from the evidence was reasonable and fair compensation for the strips taken, we are of opinion that, while technically erroneous, the instruction was not prejudicially so.

Lastly, it is contended that the verdict is excessive. A strip of land from 4 to 6 feet in width and 148 feet long was taken along Laurel street and a strip of about equal width and some 50 feet in length was taken along the alley. L. K. Calhoun and two of his witnesses testify to a value for these strips much higher than that awarded by the jury. The appellant produced but one witness on the point, and his estimate of the value was about 10 per cent. of the amount allowed. The appellant also produced the assessment for taxation of this house and these lots, which gave a figure of $1,500. But no one contended that this assessment represented the real market value of this property. Two juries have heard all this evidence and found a verdict in substan-

tially the same amount. While perhaps the verdict is liberal, we cannot say that under the evidence it is excessive.

The judgment is affirmed.